IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America

      v.                                    Case No. 1:23-CR-35-RC-1

Casey Tryon-Castro

## Defendant's Sentencing Memorandum

Casey Tryon-Castro is a self-employed mother who cares for seven children. She has a minimal criminal record, a history of employment, and proudly served her country in the military. She, along with thousands of others, was drawn to Washington on January 6 by the sitting president. That president pedaled false claims that the 2020 election was stolen by now President Biden. As a proud patriot, Ms. Tryon-Castro listened to the President. Unlike the worst actors on January 6, she did not come to the Capitol intending to subvert the transfer of power. Instead, she came to voice her concerns—concerns that were parroted that day by many in power, including many sitting senators and representatives. While surrounded by a mob, she engaged in criminal behavior. Although she disputes that she committed a robbery, she admitted that she engaged in wrongful behavior. She acknowledges that she should be punished for her conduct. But the recommended sentencing guidelines provide a punishment far too harsh for her conduct—that of a person who did not injure anyone, who did not enter the capitol, and who appeared largely to have been caught up in mob mentality. This court should sentence her to 24-months of incarceration—a sentence commensurate with her culpability on January 6. That sentence is a six-month variance below what she calculates her

applicable sentencing guidelines to be—with a base offense level of 19 and a recommended range of 30 – 37 months of imprisonment.

**Ms. Tryon-Castro's history and characteristics call for leniency.**

Ms. Tryon-Castro is no stranger to trauma. Her father committed suicide when she was just thirteen years old. Her father struggled with substance abuse and generally with mental illness, and he occasionally abused Casey's mother. The family struggled with homelessness and poverty. Casey recalls several times living in a vehicle, and she distinctly remembers the year she spent living in a group home while her parents were unable to afford to care for her and her siblings. And after her father passed away, she and her mother became even more distant. Her mother approved of Casey moving out at just fifteen years old, in part because they both knew Casey could better care for herself than her mother could. Although they still talk regularly, they do not have a typical child-parent relationship: instead, their relationship is closer to that of peers. Casey does not fault her mother for their relationship, though, as she knows the pain that one can feel for being unable to care for her children. She hopes that her mistake in attending the January 6 events will not replicate her past with her own children.

Unfortunately, turbulent family dynamics were not the only abuse Casey suffered. She was sexually abused at the young age of seven by her mother's live-in boyfriend. Like many survivors of sexual assault, she went on to experience another later in life. While serving in the military overseas, she was physically and sexually assaulted by another service member. While attacked, she suffered a traumatic

brain injury. As a result of that injury, she receives disability benefits from the Veterans Administration. She also suffers from migraines because of this incident.

Partly as a result of her turbulent childhood, Casey most closely identifies her family as her siblings. She lives close to them, and they regularly communicate and interact as a family unit. Indeed, but for her closeness with one of her brothers, she likely would not have attended the events on January 6. Her brother and her partner are set to be sentenced also for their actions on January 6. Ironically, although Casey did not plan to attend the events of January 6 until the night before, she is facing a substantially larger sentence. Of course, neither her partner nor her brother were charged with any activity in the tunnel, and neither of them was involved in a tussle over a police shield. Casey, for whatever reason, was more caught up in the mob mentality than either of the people she traveled with. Indeed, it may be because she was at the front of the line for several minutes, where tempers and tensions were most flared.

**Ms. Tryon-Castro's performance on bail demonstrates that a lengthy term of incarceration is unnecessary.**

Aside from Casey's recent arrest, she otherwise remained of good behavior. Between January 6, 2021 and now, she only received minor driving convictions. On November 13, her pending charges related to her arrest in Roanoke were dismissed. Indeed, as discussed at her bond revocation proceeding, Casey's actions were likely a traumatic response to being treated similarly to how she was assaulted in the

military: they do not demonstrate a failure to accept responsibility for her actions or any tendency to violate the law.

Casey's ability to otherwise follow the law, to care for her children, and to lead an otherwise normal life demonstrates that a sentence of incarceration is unnecessary to accomplish many of the purposes of punishment. No further deterrence is necessary, nor is there a need to protect the public from any further crimes of Casey. *See* 18 U.S.C. 3553(a)(2)(B) & (C). Further, her history of employment shows that no sentence is needed to "provide the defendant with needed education or vocational training, medical care, or other correctional treatment." 18 U.S.C. 3553(a)(2)(D). Nor will any sentence of incarceration make it easier for Casey to pay restitution for her conduct. 18 U.S.C. 3553(a)(7). Indeed, the only factors that call for incarceration focus on the needed punishment for her offense, the effect such a sentence might have on others, and the sentences of similarly culpable co-defendants.

**Why the guidelines overstate Ms. Tryon-Castro's culpability.**

Although Ms. Tryon-Castro was convicted of robbery, and the sentencing guidelines clearly point the court to apply §2B3.1, her conduct much more closely approximates that of an assault. Ms. Tryon-Castro did not purloin any objects from the Capitol or police on January 6. She did not bring home any souvenirs or trophies from her conduct that day. Indeed, she even left some items at the Capitol. Rather than celebrate her conduct that day, she remained mute. Ms. Tryon-Castro clearly did not engage in a struggle over a police shield because she wanted that

shield for herself: she did so when caught up in a moment of mob mentality during a fraught moment in the nation's history. She did so when surrounded by others (and, yes, while facing a police line) who riled up the passions of the mob. She did so for a few seconds during a moment of chaos. The sentencing guidelines for robbery overstate her culpability. Indeed, why should she receive a higher base offense level than someone who purposely used a weapon against officers that day? The court should vary downwards from the robbery guidelines because they do not capture her conduct on January 6.

The closest guideline that matches Ms. Tryon-Castro's conduct is §2A2.4—for obstructing or impeding officers. Her actions in contributing to the civil disorder, her actions in the tussle over the police shield, and her actions in remaining close to the police line while others pushed toward the officers can best be described as obstructive conduct. The guidelines call for a base level of ten, with three points added for physical conduct. Casey argues that the court ought not add points for additional victims here, as the victims were best described as the officers in total, rather than individual officers. Indeed, even Sgt. Nguyen was merely acting as a officer in the line when he grabbed the police shield from a rioter before Casey tugged on it. Given her conduct, Casey suggests the court should consider a base offense of thirteen for her convictions for robbery, assault, and civil disorder.

Nearly every court to consider the enhancement under §3A1.2 has applied the official victim enhancement. However, Casey notes that none of her conduct was specifically motivated at police because they were members of the government.

Instead, it was merely because they were blocking the entrance to the Capitol. Her conduct is better analogized to someone who resists arrests: although a person who resists arrests acts against a government official, the person's actions are not motivated by the officer's status. Instead, the officer's status is accidental to the crime. Such is the case here.

Regardless, Ms. Tryon-Castro recognizes that the court will likely apply this enhancement—resulting in an adjusted offense level of 19. Without any points for grouping, this would net a recommended guideline range of 30 – 37 months. Casey asks the court vary six months below this guideline range, accounting for her prior trauma, her familial obligations, and her otherwise law-abiding life and sentence her to twenty-four months.

Finally, the government and probation argue that Casey obstructed justice by testifying falsely. However, as argued in Casey's objection, all of Casey's testimony was based on her memory and perception of what occurred on January 6—an event several years prior to her taking the stand. Indeed, she several times volunteered that she remembered things differently than were depicted on body-worn camera footage, but that she did not contest that the footage was incorrect. These sort of statements tend to show that she was testifying to the best of her recollection and belief, and the court should not find that she testified falsely. She even admitted to many of the crimes charged against her, and merely contested that she was culpable for robbery and felony assaults.

**Casey's conduct on January 6 was not as serious as her convictions.**

To be sure, Casey admits that she engaged in wrongful behavior on January 6. She acknowledges that her presence on the Capitol, and particularly in the tunnel, was disruptive to officers, hindered their ability to control the mob, and was illegal. Unlike many in the tunnel, though, Casey never used a weapon against officer. Unlike many, she did not use her hands, feet, or body to push against officers. Although she occasionally cheered on the crowd, she did not forcibly assault officers. Indeed, her conviction on those counts could have been found as a result of her presence in the tunnel and her willful opposition of officers. At one point, body camera footage clearly shows her helping an officer whose arm was stuck in a doorway. And several times officers can be seen condoning her presence—not because she should have been there, but because her actions clearly demonstrated she was the least threatening person in the tunnel. Yes, Casey was involved in a struggle over a police shield. But that shield was initially held by another member of the crowd: helping another member of the crowd retain a defensive instrument should be seen as less deserving of punishment than forcibly physically assaulting law enforcement. It is merely a quirk of the guidelines that her brief struggle over a shield recommends a greater sentence than that of someone who wields a weapon forcibly against officers.

## Conclusion

Applying the guidelines that most closely match Casey's conduct results in an adjusted offense level of 19. With a criminal history category of I, the court should find that the guidelines recommend a sentence of 30 – 37 months. Casey asks the court to vary

downwards by six months from that range and impose a sentence of twenty-four months. Some incarceration is necessary to promote respect for the law, provide just punishment, and to deter others. But her conduct that day was relatively minimal, especially for those involved in the assaults in the tunnel. Her history of employment, her service in the military, her role as a caregiver to seven children, and her lengthy history of trauma all call for lenience. They demonstrate that a sentence of lengthy incarceration is unnecessary. A sentence of 24 months is sufficient, but not greater than necessary to accomplish the purposes of punishment.

/s/ Benjamin Schiffelbein

625 Indiana Ave NW Ste 550
Washington, DC 20004
Benjamin_Schiffelbein@fd.org
202 227 0640